UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Melissa Butera, as Mother and
Natural Guardian of Selena Zobrist,

                              Plaintiffs,

                                                              **Hon. Hugh B. Scott**

                                                              12CV51A

                              v.                              **Report &
                                                              Recommendation**



Southwest Airlines Company,

                              Defendant.



        The plaintiff,  Melissa Butera, as Mother and Natural Guardian of Selena Zobrist

(referred to as "Butera"), commenced this matter in New York state court seeking damages

against Southwest Airlines Company ("Southwest") based upon the allegation that the defendant

placed Selena Zobrist on the wrong flight.  It appears that Southwest placed Selena on a flight

from Tampa, Florida to Baltimore International Airport, instead of a flight to Buffalo.  (Docket

No. 1-1 at ¶ 2). Selena was subsequently placed on a second flight (presumably from Baltimore)

to Buffalo, New York. (Docket No. 1-1 at ¶ 2).  The complaint alleges that Southwest was

negligent and that the plaintiff "sustained various injuries requiring medical treatment as a result

of the trauma caused by placing the child on the wrong flight." (Docket No. 1-1 at ¶5).  Butera

alleges that she "sustained damages due to the loss of friendship, society and companionship of

her infant daughter, Selena Zobrist, due to the incident described above." (Docket No. 1-1 at ¶ 7).

As a result, the plaintiff asserts that she has been "damaged in the sum in excess of the jurisdictional limits of all lower courts." (Docket No. 1-1 at ¶ 8).[1]

The defendants removed this action to Federal Court based upon the diversity of citizenship between the parties. (Docket No. 1 at ¶ 8).  The plaintiff, however, seeks to remand this case back to state court based upon the assertion that the amount in controversy "is not in excess of $75,000, plus costs and interest as required by 28 §1332(a)." (Docket No. 8 at ¶ 1). The plaintiff also contends that the defendants have failed to "prove" the plaintiff's citizenship of New York. (Docket No. 8 at ¶ 6).

Section 1332(a) requires complete diversity between all plaintiffs and all defendants. There appears to be no dispute that the defendant is a citizen of the state of Texas.  The plaintiff has acknowledged that she is a resident of New York. The plaintiff does not claim to be a citizen of a state other than New York.  Generally, if one is a domiciliary of the state of New York, one is a citizen of the state of New York. See Wright, Miller & Cooper, Federal Practice and Procedure (2009) Section 3617, at 530. See also BrandAid Marketing Corp. v. Biss, 2003 WL 21998972 (S.D.N.Y. 2003); Saunders v. Heavy Equipment Leasing Co., Inc., 1989 WL 88554 (W.D.N.Y. 1989). There does not appear to be a real dispute as to whether the plaintiff is, in fact, a citizen of New York. Thus, based upon the record before the Court, it appears that complete diversity exists in this case.

Diversity jurisdiction pursuant to 28 U.S.C. §§1332(a) also requires that the amount in controversy must equal or exceed $75,000 exclusive of interests and costs.  The party removing a

---

[1]   It appears that the jurisdictional limit relating to cases brought in County Courts in New York is $25,000 (New York State Judiciary Law §190(3)); the jurisdictional limit in Buffalo City Court is $15,000 (New York State Constitution, Art.VI §§ 17(a) and 16(d)); and New York State Town and Village Justice Courts have the jurisdictional limit of $3000 (New York Uniform Justice Court Act §202)

case to federal court bears the burden of establishing facts supporting the jurisdictional amount.

Blockbuster Inc. v. Galeno, 472 F.3d. 53, 57 (2d. Cir. 2006).   Where, as here,  the pleadings do

not establish the amount in controversy and "where ... jurisdictional facts are challenged, the

party asserting jurisdiction must support those facts with 'competent proof' and justify its

allegations by a preponderance of the evidence." United Food Commercial Workers' Union v.

CenterMark Properties Meridian Square, Inc., 30 F.3d 298, 305 (2d Cir.1994). A defendant need

not prove the amount in controversy to an absolute certainty. Instead, defendant "has the burden

of proving that it appears to a reasonable probability that the claim is in excess of the statutory

jurisdictional amount." Mehlenbacher v. Akzo Nobel Salt, Inc., 216 F.3d 291, 296 (2d Cir.2000).

Here, the complaint does not set forth a monetary demand.[2]  The defendant has asserted

that the jurisdictional amount is satisfied because the plaintiff's counsel, apparently in the context

of settlement discussions, communicated to the defendant's counsel that he is "seeking damages

on behalf of the plaintiff in excess of $75,000." (Docket No. 1 at ¶ 9). Indeed, it appears that the

plaintiff has demanded "almost $150,000" to settle this claim. (Docket No. 11 at page 5).  The

plaintiff does not deny that such a representation was made, but states that the defendant has only

offered to settle the case for $25,000. (Docket No. 8 at ¶4).  Thus, the plaintiff contends that the

defendant has not met its burden to establish that the jurisdictional amount is satisfied.  (Docket

No. 8 at ¶ 5).

A similar dispute was presented in Boeck v. Pacific Cycle, Inc., 2011 WL 98493

---

[2]   There is no evidence that defendant ever requested a supplemental demand, pursuant to
C.P.L.R. 3017(c), setting forth total damages sought. C.P.L.R. 3017(c) provides that  "a party
against whom an action to recover damages for personal injuries or wrongful death is brought,
may at any time request a supplemental demand setting forth the total damages to which the
pleader deems himself entitled. A supplemental demand shall be provided by the party bringing
the action within fifteen days of the request."

(W.D.N.Y. 2011). In that case, Judge Richard J. Arcara stated:

> To resolve this issue, the Court will review the two ways in which
> a plaintiff in any case winds up establishing the amount in
> controversy. Those two ways appear in the two paragraphs of 28
> U.S.C. § 1446(b). ... The first way to establish the amount in
> controversy, pursuant to the first paragraph of Section 1446(b), is
> to state the amount in "the initial pleading setting forth the claim
> for relief upon which such action or proceeding is based." ...  Here,
> CPLR 3017(c) prohibited plaintiffs from claiming any amount in
> the "initial pleading" here, the complaint. Since removal, plaintiffs
> have not filed any amended complaint on their own that set forth a
> claim for a specific amount. The first paragraph of Section 1446(b)
> thus cannot help to resolve the main issue in the pending motion.

Boeck, 2011 WL 98493 at * 2.

Thus, as here, the Court had to look to an alternative means to determine whether the

jurisdictional amount was satisfied.  In this regard, Judge Arcara held:

> The second way to establish the amount in controversy, pursuant to
> the second paragraph of Section 1446(b), is to examine any
> subsequent "amended pleading, motion, order or other paper from
> which it may first be ascertained that the case is one which is or
> has become removable."... The second paragraph of Section
> 1446(b) gives defendants a one-year window within which to act
> when federal jurisdiction is not obvious from the face of the
> complaint but becomes obvious through later filings or
> proceedings. The second paragraph of Section 1446 has one
> important limitation, however: ***Any "other papers" examined
> must post-date the initial pleading***. See Chapman v. Powermatic,
> Inc., 969 F.2d 160, 164 (5th Cir.1992) ("By its plain terms the
> statute requires that if an 'other paper' is to trigger the thirty-day
> time period of the second paragraph of § 1446(b), the defendant
> must receive the 'other paper' only after it receives the initial
> pleading."); see also Lovern v. Gen. Motors Corp., 121 F.3d 160,
> 162 (4th Cir.1997) ("[W]e will allow the court to rely on the face
> of the initial pleading and on the documents exchanged in the case
> by the parties to determine when the defendant had notice of the
> grounds for removal, requiring that those grounds be apparent
> within the four corners of the initial pleading or subsequent paper.
> This test that we adopt is consistent with that espoused by the
> Third and Fifth Circuits.") (citations omitted). Here, the parties
> have filed no amended pleadings or motions other than the pending

> motion itself. The only "other paper" that defendant submits for
> consideration is plaintiffs' settlement demand of $80,000,
> submitted more than once but no later than May 25, 2010. That
> settlement demand pre-dated the complaint and thus forms no part
> of the claims framed in the complaint. Any post-complaint
> documents available in this case so far tend to suggest an amount
> in controversy below the jurisdictional threshold. As a result, the
> second paragraph of Section 1446(b) also cannot help defendant
> meet its burden of establishing proper removal.

Boeck, 2011 WL 98493 at * 2 (emphasis added).

Since Boeck, §1446 has been amended, effective January 6, 2012. The provision dealing

with the amount in controversy for diversity jurisdiction purposes is now codified in §1446(c)(2),

which states, in pertinent part:

> If removal of a civil action is sought on the basis of the jurisdiction
> conferred by section 1332(a), the sum demanded in good faith in
> the initial pleading shall be deemed to be the amount in
> controversy, except that–
>
> (A) the notice of removal may assert the amount in controversy if
> the initial pleading seeks--
>     (i) nonmonetary relief; or
>     (ii) a money judgment, but the State practice either does not
>     permit demand for a specific sum or permits recovery of
>     damages in excess of the amount demanded; and
> (B) removal of the action is proper on the basis of an amount in
> controversy asserted under subparagraph (A) if the district court
> finds, by the preponderance of the evidence, that the amount in
> controversy exceeds the amount specified in section 1332(a).

28 U.S.C. §1446(c)(2). Section 1446(c)(3) provides that "[i]f the case stated by the initial

pleading is not removable solely because the amount in controversy does not exceed the amount

specified in section 1332(a), *information relating to the amount in controversy in the record of*

*the State proceeding, or in responses to discovery, shall be treated as an 'other paper' under*

*subsection (b)(3).*" 28 U.S.C. §1446(c)(3) [emphasis added].  It does not appear that the

settlement letter relied upon by the defendant is contained "in the record of the state proceeding"

or was "a response to discovery." Moreover, consistent with the analysis in <u>Boeck</u>, this language

refers to §1446(b)(3) requiring that the removal take place "within 30 days after receipt by the

defendant, through service or otherwise, of a copy of an amended pleading, motion, order or

other paper from which it may first be ascertained that the case is one which is or has become

removable." As discussed in <u>Boeck</u>, this language implies that any such "other paper" be

received after the initial pleading.

In the instant case, the demand letter relied upon by the defendant is dated November 22,

2011. The complaint in this case is dated December 6, 2011 (Docket No. 1-1) and the defendant

acknowledges that the action was not commenced in the New York state court until December

30, 2011. (Docket No. 1 at ¶ 3).  Thus, the defendant cannot rely upon a settlement letter which

pre-dates the initial pleading to satisfy their burden to establish the amount in controversy under

§1332.  The defendant has articulated no other basis upon which to conclude that the

jurisdictional requirement has been met in this case.

Based on the above, it is recommended that the motion to remand this matter to the state

court be granted.

Pursuant to 28 U.S.C.  §636(b)(1), it is hereby ordered that this Report &

Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the

Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk**

**of this Court within fourteen(14) days after receipt of a copy of this Report &**

**Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the**

**Federal Rules of Civil Procedure, as well as W.D.N.Y.  Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION**

**WITHIN THE SPECIFIED TIME,  OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**  Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and W.D.N.Y.  Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y.  Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3)may result in the District Court's refusal to consider the objection.**

So Ordered.

/s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
June 12, 2012